# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

(To be supplied by the court)

F I L E D
UNITED STATES DISTRICT COURT
DENVER, COLORADO

DEC 0 9 2024

JEFFREY P. COLWELL
CLERK

_____

__PHILIP E. STETZEL_____, Plaintiff

v.

**Jury Trial requested:**
(please check one)
_____ Yes __X__ No

__MOSES 'ANDRE' STANCIL,_____,

__SIOBHAN BURTLOW,_____,

__JORDAN HARTLEY,_____,

__AMANDA RETTING,_____,

__JAMES BAILEY_____,

__SHANNON FOLZ_____,

_____,

Defendant(s).

(*List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.*)

| **PRISONER COMPLAINT** |
| --- |

1

| NOTICE |
|---|
| Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files.  Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number.  A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.** |

### A.    PLAINTIFF INFORMATION

Philip E. Stetzel, CDOC #92684

Sterling Correctional Facility

12101 Hwy 61

P.O. Box 6000

Sterling, CO  80751

Indicate whether you are a prisoner or other confined person as follows: (check one)

____  Pretrial detainee

____  Civilly committed detainee

____  Immigration detainee

_X_  Convicted and sentenced state prisoner

____  Convicted and sentenced federal prisoner

____  Other: (Please explain)

### B.    DEFENDANT(S) INFORMATION

**Defendant 1:**  MOSES "ANDRE" STANCIL, Executive Director of the Colorado Dept. of Corrections (CDOC), 1250 Academy Park Loop, Colorado Springs, CO  80910 .

2

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?   _X_ Yes   No (check one).  Briefly explain:

  As executive director of the CDOC, Mr. Stancil is a state employee and as such is obligated to follow state law, CDOC administrative regulations (ARs), and abide by both state and federal constitutions.  Mr. Stancil is tasked with the creation and implementation of administrative regu-lations, CDOC policies and operational procedures, as well as to maintain general oversight, and correction (if necessary) of all CDOC-related issues.

Defendant 1 is being sued in his/her      individual and/or  _X_ official capacity.


**Defendant 2:**  SIOBHAN BURTLOW, Warden of the Fremont Correctional Facility (FCF),

P.O. Box 999,  Canon City, CO  81215 .

(Name, job title, and complete mailing address)

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  _X_ Yes       No (check one).  Briefly explain:

  As warden of FCF and an employee of CDOC, Ms. Burtlow is obligated to follow both state law and CDOC administrative regulations.  She is also tasked with ensuring that all applicable ARs are implemented and adhered to by her subordinates at FCF. Warden Burtlow is also responsible for the implementation of the facility's policies and operational procedures, along with ensuring that any internal problems are appropriately addressed.

Defendant 2 is being sued in his/her ____  individual and/or  _X_ official capacity.


**Defendant 3:** JORDAN HARTLEY, CDOC Sex Offender Treatment & Monitoring Program (SOTMP) therapist at the Fremont Corr. Facility, P.O. Box 999, Canon City, CO  81215.

(Name, job title, and complete mailing address)

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  _X_ Yes       No (check one).  Briefly explain:

At the time that the events and issues involved in this Complaint arose, Ms. Hartley was/is an SOTMP contracted licensed therapist who was then engaged as the Plaintiff's primary therapist. As such, she is deemed a state employee who is obligated to abide by state law, CDOC admini-strative regulations as well as regulations and guidelines appropriated by the Colorado Depart-ment of Regulatory Agency (DORA).

3

Defendant 3 is being sued in his/her  _X_  individual and/or  _X_  official capacity.

**Defendant 4:**  AMANDA RETTING, CDOC SOTMP Administrator/Supervisor;   CDOC,

1250 Academy Park Loop, Colorado Springs, CO  80910.

At the time the claim(s) of the complaint arose, was the defendant acting under color of state or federal law?  _X_ Yes  ___ No.  Briefly explain:

As CDOC's SOTMP Administrator, Ms. Retting is in charge of the management and operations of this *sex offense-specific* treatment Program. As such, she is believed to be a contract licensed employee of the state and, as such, is obligated to follow state law, CDOC ARs, as well as DORA regulations and guidelines. She is tasked with the creation and implementation of SOTMP policy and operational rules and guidelines, etc.  Ms. Retting is believed to have ulti-mate authority in all SOTMP-related issues and to maintain oversight of all program-related matters.

Defendant 4 is being sued in her  _X_  individual and  _X_  official capacity.

**C.    JURISDICTION**

Indicate the federal legal basis for your claim(s): (check all that apply)

  _X_  State/Local Official (42 U.S.C. § 1983)

Federal Official

As to the federal official, are you seeking:

___ Money damages pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971)

 _X_   Declaratory/Injunctive relief pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1361, or 28 U.S.C. § 2201

Other: (please identify)

4

**D. STATEMENT OF CLAIM(s)**

State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."

**CLAIM ONE:** 8th Amendment, U.S. Constitution: a) Liberty Interest; b) Equal Protection; c) Cruel and Unusual Punishment

Claim one is asserted against these Defendant(s): All named defendants.

Supporting facts:

**a. Liberty Interest**

[1] I am a convicted sex offender serving an indeterminate sentence of 12 years to life, per the Sex Offender Lifetime Supervision Act of 1998 ("SOLSA"). I am now nearing the end of my **24th year of continuous incarceration** on this Class 3 felony offense due to the ramifications involved with certain events occurring during my times of involvement with the statutorily-mandated Colorado Department of Corrections ("CDOC") Sex Offender Treatment & Monitoring Program ("SOTMP"). In particular, this action stems from my termination(s) from this mandated treatment program and thereby effecting a state-created liberty interest which is a pre-determined valid 10th Circuit court-decided 8th Amendment issue applicable to such circumstances as those contained in this Complaint.

[2] This Claim One arises out of my July 27, 2023, termination from the SOTMP at the Fremont Correctional Facility ("FCF"). And this termination stems from my freely-admitted confession to violating both a CDOC Code of Penal Discipline ("COPD") and an SOTMP contract rule of having a physical [non-sexual] altercation with another inmate, namely my ex-cellmate, Tom Mavus ("Mavus"), who provoked my physical response by his repeated physical threats towards me despite my warning not to do so. I struck him *once* in the eye, which defused the situation. We both then agreed it best to not say anything about this incident to anyone due to the probable consequence of being terminated – as we both were enrolled in this mandated treatment program.

[3] This incident went without any problems until *two days later* (6/21/23) when I freely confessed the incident during my Group therapy session as an act of demonstrating my personal desire to address all rehabilitative issues which may hinder my progress in the program. Unfortunately, this confession held no apparent value to the Defendants, HARTLEY, BAILEY and FOLZ, or the FCF/SOTMP "Treatment Team," and subsequently led to my first being

charged with, and convicted of, a CDOC Code of Penal Discipline Rule 5 violation: "Assault on Offender," at a hearing on June 27, 2023. This charge (and conviction), I assert, is both excessive and misleading in light of my affirmative claim of "self-defense" and in response to Mavus's repeated physical threats towards me. My objections to this over-charged conviction were dismissed without any consideration, explanation, or stated investigation as records of Discovery will later confirm.

[4]  From this conviction I was sentenced to 15 days of Punitive Segregation, which I completed, and fined $500.00. I also received prompt notice from the Colorado Board of Parole that my scheduled August 2023 hearing was deferred for a full year due to the COPD conviction. Upon the completion of punitive segregation on 7/7/23, I was unexpectedly, and unnecessarily, transferred from FCF to the Buena Vista Corr. Facility ("BVCF") on 7/7/23 and prior to my termination from the SOTMP on 7/29/23 (via teleconference). I assert that this unnecessary transfer was a usurpation of the SOTMP/CDOC's Programming "priority" policy, as provided by Administrative Regulation ("AR") 600-01, Offender Classification, that this assessed "recommended" (i.e. mandatory) SOTMP treatment program takes priority over all other incarcerative agendas. It now must be noted that until my 7/29/23 termination hearing, I was still technically committed to the SOTMP and, as such, supports my assertion of inappropriate proceedings throughout this entire matter. (See AR600-01 (IV) (F) (5): "Inmates participating in programming will not be moved prior to completion [or termination] unless significant safety, security, or service needs arise and can't be adequately addressed at the current facility assignment.")(Emphasis added.)

[5]  Formal action regarding my termination from the SOTMP began with the requisite "Notice of Suspension and Right to SOTMP Termination Review" (the "Report") generated by Defendant HARTLEY on 7/18/23. This Report cited not just the confessed incident with fellow SOTMP client, inmate Mavus, but also included allegations which, until receipt of this Report, had NEVER been brought to my attention. The allegations are not only captious, but were made, I  assert, as a means to bolster HARTLEY's assumed agenda to ensure my termination from the SOTMP – which needed the support of her colleagues: the FCF SOTMP "Treatment Team," which includes Defendants FOLZ and BAILEY. Up until this time I had only received positive feedback from both Group therapists (Cantu and Richardson) as well as HARTLEY, my then-Primary Therapist. Upon my receipt of this Report, I requested Cantu and Richardson, as well as Mr. Mavus, as witnesses for the scheduled 7/29/23 hearing. But for unexplained reason, neither were present for this virtual hearing. When I attempted to contest the allegations during the hearing, the chairman, Justin Ensinger, promptly shut me down, stating that it was not the time and place for such challenges. I claim that the unexplained absence of the timely-requested witnesses and denial of my attempt to address the allegations of the Report are violations of due process. (See Claim Two (c).)  If truthful, I anticipated testimony from Cantu and Richardson to only reiterate their previously stated accolades as to my "progress" over the previous six months (my entire time in their Group). And without redress, these allegations remain in my record as disinformation and stand to be something that will become problematic once I am returned to the treatment program(s). I consider that to be unnecessary, unjust, and a waste of time and resources and contrary to legislative intent stated in §18-1.3-1001, C.R.S.  (See FN6, page 13 of this document.)

6

[6]  Appeal(s) for the COPD conviction is limited specific procedural errors and/or "newly discovered evidence," both of which I could not adequately plead, although I did try. And the governing termination regulation, AR700-32, proscribes all forms of appeal (aside from legal action) pertaining to one's termination from the SOTMP. And despite certain prohibitions of AR850-04, Grievance Procedure, I challenged the above issues via grievances C-BV23/24-00238069 (HARTLEY's Report); R-BV23/24-00236308 (COPD/Self-defense); R-BV23/24-00236580 (Transfer to BVCF); and C-BV23/24-00242947 (Return to Treatment Questionnaire). I also lost personal property as a result of these events and was compelled to file the related grievance R-BV23/24-00236581. These grievances all received generic and averting responses which I intend to address in subsequent proceedings in support of my claims herein.

Termination from the SOTMP, alone, is a state-created liberty issue and a violation of 8th Amendment protections that bear adjudication in this matter. I am entitled to relief from such violations of protected Constitutional rights such as this.

**b. Equal Protection**

[6]  This second part of my Claim One claim calls into question the disparity and discrepancy involved with the way that issues such technical, or rule breaking/non-criminal violations (e.g., Code of Penal Discipline, SOTMP Contract, or even parole supervision infractions) are dealt with between "similarly-situated" same classed convicted felons whose only difference is one is either incarcerated or on parole/probation. (See AR700-19; CRS §16-11.7-102,-103 et al.)

[7]  In anticipation of the Defendants' objection to classifying those convicted sex offenders who are incarcerated as those who are on supervised release (parole), I cite the following language (in pertinent part) from *Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L. Ed. 2d 285 (1963) by S.Ct. Judge Black: "[A] *prisoner who had been placed on parole was still "in custody" under his unexpired sentence…"* This quote was subsequently reiterated in *Maleng v. Cook* and *Shields v. Duncan*. (Citations intentionally omitted). In further support I state that sex offenders have been deemed as a court-recognized class for legal matters such as this. Wherefore, I will reserve further argument on this specific issue until a later time, if need be.

[8]  The gist of this equal protection issue is based upon my COPD conviction and the related termination from the SOTMP, both of which I maintain are extremely excessive actions in relation to the same single common factor of each of these two punitive actions. There were other "less-restrictive" alternative options available in each action, yet they were ignored completely, even when I sought redress through the only available appeal (COPD) and the various grievances and personal letters written to Defendants HARTLEY (6/30/23); BAILEY (6/30/23, 8/13/23); RETTING (10/3/23, 3/14/24); and FOLZ (10/23/23, 5/4/24) – all of which failed to generate even a reply to acknowledge their receipt.

[9]  It is now important to note that my COPD conviction was expunged, without stated cause, on 2/8/24. Yet I have already suffered the related sanctions of Punitive Segregation, deferred parole hearing, and transfer from SOTMP-available facility (FCF). More importantly I continue to suffer from the related direct consequence of being terminated from the SOTMP. And as such

I stand to continue to suffer this sanction for yet another two more years[1] unless redress is achieved through this (or other) civil action(s). If this underlying event (COPD) has now been expunged, meaning it now should be completely erased from all records. Why, then, would this not directly affect the termination and restore me to my previous status and return me, immediately, to the SOTMP? For this I am calling for judicial review and response for clarity, and correction, if applicable. Because I have already suffered the related sanctions of 15 days of punitive segregation, a one year deferral from an application for parole consideration, and a transfer to a non-treatment facility(s) as well as the effected daily stress associated by all of these factors, **immediate** reinstatement to the SOTMP is the proper remedy here.

[10]  A review of the governing statutes and ARs for those same class, similarly-situated sex offenders who are on parole, those who are supervising the parolee, Community Parole Officers ("CPO") and Community Supervision Team ("CST") (such as therapeutic treatment providers) are *required* to utilize the various available alternatives (to revocation) for addressing such rule violations (such as in the instant case) and sometimes *multiple times*, before seeking revocation – the most severe sanction available. (See AR250-46, Sanctions in Lieu Of Revocation/Regression. et al[2]) And in regards to revocation of parole/return to prison, it is my contention that my termination from the SOTMP is the equivalent to the revocation of one's parole as both are extensions of one's incarceration.

[11]  When a parolee is revoked for a technical violation, revocation is usually for a set period of time, or "turn-around," which is often a period of 180 days, s/he is also provided some sort of a "road map" for which to re-paroled. If s/he satisfactorily completes the set period of incarceration, s/he is then re-released on parole again. But when this same offender who is incarcerated and has never been paroled is terminated from the SOTMP for a similar "technical" violation, such termination is **always** of indefinite duration which, in all probability, is for about **three years!**[1] And the official weight of the Board of Parole should make such decisions that affect my continued/extended incarceration, not some SOTMP contract therapist's subjective, arbitrary decision – or "recommendation" – for which the Parole Board relies upon when granting or denying release for a sex offender. Further, termination from the SOTMP (for incarcerated offenders) lacks parameters and provides no such "road map" for re-entry. In fact, I have recently learned that the "similarly situated" parole-revoked, or "returnee" sex offender can now demonstrate the requisite "progress" needed to satisfy Parole Board requirement) on his/her own volition, instead of simply stagnating idly, such as I am, while waiting for an opening in DOC's severely backlogged SOTMP and thereby almost ensuring their being granted re-parole at the earliest time. Conversely, I was even denied the requisite Return to Treatment Questionnaire for

---

[1] See *Stetzel v. Williams*, 20-cv-01579-PAB-STV (where termination from the SOTMP lasted **3 years** and one month) Also see *Tillery v. Raemisch*, No. 16-cv-0282-WJM-STV (re SOTMP's severely problematic Global Referral List and related issues).

[2] C.R.S.§17-2-103 Arrest of Parolee; AR250-09 Immediate Sanction Plan; AR250-37 Parole Directives & Modification of Parole Conditions; AR250-41 Responding to Parole Violations, etc.; AR250-46 Adult Parole Sanctions in Lieu of Revocation/Regression; AR250-54 COPD Process & Offender Regression From ISP; AR250-48 Supervision of Sex Offenders; et al.

six months. The provision of this required document only came at the very end of my exhaustion of available administrative remedy: my Step III grievance (#C-BV23/24-00242947). Such inexcusable delay effectively amounted to a six-month "black hole" in regards to my re-entry into the SOTMP and, ultimately, my release from prison. And as I repeatedly assert in this Complaint, such termination, for reasons stated herein, carries no rational relationship to penologic purpose and in fact flies in the face of the language of Statutory Intent of Colorado's Sex Offender Lifetime *Supervision* Act of 1998 ("SOLSA") (Emphasis added).

[12]  My "technical" (non-criminal) offense, a COPD violation, was first dealt with just as all CDOC offender violations are dealt with. The DOC has a long established means of administering what has been deemed as an appropriate and sufficient way for punishment of the offense and as an adequate deterrent. So how does the SOTMP justify their added and excessive punishment here? I assert and maintain that my now-expunged COPD offense has absolutely no bearing in regards to my "sex *offense-specific* treatment" (i.e., SOTMP) or, more specifically, my "risk to sexually reoffend." Wherefore, through this civil action I am calling for the Defendants to be answerable to provide a "rational relationship to legitimate penological interests" to justify such extreme sanctions in this matter – especially since I've already been sufficiently punished through the DOC's COPD process. This may also be considered a form of double jeopardy that also merits judicial review and, hopefully, redress.

[13]  I now refer to the authority provided by *Turner v. Safley*, 482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987) regarding the reasonableness of all those sanctions imposed upon me – and all because of my response to another inmate's repeated physical threats towards me. And as previously stated, the most serious sanction: my termination from the SOTMP, is one that I've already been suffering for over a year and will continue to suffer for a realistically-estimated *two years more*! I rely on the four enumerated factors of *Turner*[3] to be applicable to the specific issues stated in this subsection (b) of my 8th Amendment claim(s). It seems that these four factors were taken into consideration when formulating those applicable statutes and ARs, cited herein, for those paroled sex offenders ("SO") facing a COPD and/or revocation but were not considered when dealing with this issue(s) of an incarcerated SO faced with termination from the SOTMP for an equitable non-criminal rule or SOTMP contract infraction. Even though a parolee SO is still subjected to DOC administrative regulations, such as AR150-01 Code of Penal Discipline, as well as the continuous sex offender treatment contracts that are identical or comparable to that which I remain accused of violating, there are also state statutes that could be applied to the same class, similarly-situated parolee who, under those same circumstances for which my COPD (and termination) were based upon (Rule 5, Assault on Offender) would not have been applied due to the specifics involved and the degree of these for the applicable statutes and ARs mandate that a parolee's community parole officer ("CPO"), as well as the sex offender's Community Super-

---

[3] *Turner*: 1. Whether there exists a valid, rational connection between the prison policy and a legitimate penological interest identified by the government; 2. Whether there are alternative means of exercising the rights that remain open to prison inmates; 3. What effect an accommodation of the asserted constitutional right would have on guards, other inmates, and prison resources; 4. Whether an alternative is available which would accommodate the prisoner's rights at a *de minimis* cost to penological interests.

vision Team ("CST"), are to respond to such non-criminal violations, as exampled below, as well as those cited above in FN2:

> C.R.S. §17-2-103 (1.5) (a) & (b):
>
> (a) Except where arrest or revocation is mandatory pursuant to this sect. 17-2-103.5, and except as provided in paragraph (g) of this sect. (1.5), a CPO *must* consider all appropriate or available intermediate sanctions, as determined by policies of the division of adult parole, *before* s/he files a complaint for revocation of a parolee for a *technical* violation of a condition of parole for which the underlying behavior is not a criminal offense.
>
> (b) A CPO *shall* utilize intermediate sanctions to seek a parolee's non-compliance or seek modification of parole conditions*, or do both*, as deemed appropriate by the CPO, in the manner that is consistent with the severity of the non-compliance and the *risk level of the parolee*. (Emphasis added)

See also AR 250-46 *Adult Parole Sanctions In Lieu of Revocation/Regression* [in conjunction with CRS §17-2-101, 102, cited in FN2].

### c. Cruel & Unusual Punishment

[14] This section of Claim One will focus on *psychological* injury associated with the various factors to be stated here, but which also incorporates the issues of the previous sections (a & b) as well as that of Claim Two as if fully stated herein. Due to the complexity of the individual issues involved with a mental/emotional injury claim and their convoluted interaction, in my attempt to formulate a "clear and concise" and "well-pled facts," yet remaining brief (per §1983 instructions), I will merely list the factors involved which contribute to the asserted mental injury attributed to the issues pertaining to this Complaint. The Court may not deem these issues to be *individually* significant enough to cause psychological injury, but the 8th Amendment allows for a **"totality of conditions"** claim, such as in the case here.

[15] The contributing factors which I assert and intend to engage in subsequent argument (with supporting documentation) needed for fair adjudication are, simply put and not limited to, the following:

- The predominant state-created liberty interest involved with my termination from the SOTMP (of indefinite duration) that makes me ineligible for parole.
- The related excessive, unwarranted "overtime" I've been subjected to (24+ years on a 12 year – indeterminate sentence[4]) with still no end in sight.
- My unnecessary transfer(s) to "non-treatment (SOTMP)" facilities which provide no meaningful or useful (for me) programming or employment.
- Such facilities place me, as a convicted sex offender, in high risk safety situations where I (and others) am subject to repeated physical harm and theft.

---

[4] See *Mitchell v. N.M. DOC,* 193 U.S. App. LEXIS 13138 (10th Cir. 6/1/93). (Imprisonment beyond one's term implies cruel & unusual punishment.) Also see U.S. v. Antelope, 395 F.3d 1128 (9th Cir. 2005), and *Benefield,* 241 F.3d at 1272 (re psychological injury).

- The continuous stress of "forced" pro se litigation for which to seek redress of these issues.
- Frequent and unnecessary disruption in housing and stability (i.e., "comfort" factors). Such moves often result in loss of personal property which I cannot afford to replace.
- Due to on-going staffing problems, I have been unable to obtain a job, receive normally-available therapeutic assistance or, in the stead, maintain a regular recreational routine to compensate for these losses.
- Staff shortages, now at ALL DOC facilities, result in incompetency, apathy, poor medical and mental health services, unscheduled/unnecessary lockdowns or operational disruptions, and increased inmate misbehavior (e.g. lots of drug abuse).
- Physically (and consequently mentally) I've developed increasing bodily pains due to years of sleeping on two-inch-thick mattresses
- I, and other incarcerated sex offenders[5], cannot progress to lesser-security than Medium/Level III prisons as other inmates can, nor am I eligible to receive Good/Earned Time credits since reaching my PED (Parole Eligibility Date) in December 2010. Whereby there is no such "incentives" for my continued good behavior as there are for the average DOC inmate.
- Due to the long-term and persistent stressors stated herein (as well as others) and their on-going duration, I have been compelled to seek, and obtain, psychotropic medication which I recently submitted to. (See *Benefield, Id.,* (FN4).)

As I stated, and I'm sure the Court recognizes, issues involving a party's mental state of being in such matters as this often require the evaluation and testimony of expert witnesses in order to substantiate, or refute, the presence and extent of any claimed psychological injury, such as in this matter. As is, I anticipate the reviewing magistrate or the defendants will summarily declare this section of this Claim (as well as others) as being "unfounded," "unsupported," "bare," "conclusory," "speculative," etc. Wherefore, I am hereby requesting that I be allowed to present further argument and documentation in support of my assertions before the Court makes any adverse decisions regarding this complicated matter. Additionally, should this claim be allowed to proceed for further development, I will seek the provision of court-appointed expert evaluation and testimony in the form of oral arguments, if needed.

The totality of the elements cited (and uncited) herein, as well as the events and related consequences of this Complaint, have in fact caused me extensive psychological injury which has caused me to question my sanity: Is it me? Or is it them? Could I have been so wrong for so long and so many times? Is THIS how "rehabilitation" works? For me and this internal strife – and whose repeated cries for help have seemingly gone unheard or at least unanswered, except in the form of accusatory language which is accompanied by such spontaneous and extreme actions such as those cited in this Complaint, I am asserting that such treatment – or should I say neglect? - equates to cruel and unusual punishment. Here, I feel that the following quote by

---

[5] It has recently come to my attention that here at S.C.F., a medium-high security prison, that transgender sex offenders have been sellectively allowed to progress to S.C.F's lower security section, with its own incentives, thereby creating an equal protection issue for which I and others are moving towards challenging.

Judge Wiley Y. Daniels, in the case *Beebe v. Heil*, 333 F.Supp.2d 1011, 1016-17 (D.Colo. 2004) merits recitation since it adequately applies to me/my personal, "state-created" struggles:

> "The withholding of treatment, then, would work a 'major change in the condition of [the plaintiff/inmate's] confinement," ...since his status would change from 'eligible to be
>
> considered for parole' to 'ineligible to be considered for parole.' Such a change would, without doubt, have a *serious* impact **on a prisoner's** morale, outlook, hope for the future, and motivation to pursue rehabilitation. As such, <u>there can be no serious dispute that the deprivation of treatment amounts 'to a grievous loss to the inmate.'"</u> (Emphasis added.)

 I am entitled to relief from this constitutional violation. I am hereby requesting that I be given a fair opportunity to present supporting documentation and to enter into formal Qs & As with the Defendants in hope of obtaining both the help/understanding I seek and, especially, relief from such psychologically cruel & unusual punishment.

**CLAIM TWO:** <u>14TH Amendment, U.S. Constitution:  a) Substantive Due Process,  b) Cruel & Unusual Punishment, c) Procedural Due Process.</u>

Claim Two is asserted against these Defendant(s): STANCIL, RETTING and HARTLEY

Supporting Facts

### a.  Substantive Due Process

[17]  Substantive due process provides protection against arbitrary governmental actions that are contrary to the concept of individual autonomy. As such, I am calling into question my termination from the SOTMP and invoking my liberty interest claim, as well as the disparity and discrepancy between "us" same-classed and similarly-situated convicted sex offenders, albeit incarcerated or released on parole, who are in violation of a rule – or "technical" infraction. In the instant case I, now, stand in violation of a SOTMP client's Contract rule and continue to suffer the extreme/excessive sanction of my indefinite termination from the mandated SOTMP. As such, this implicates a state-created liberty interest, as stated in Claim One and reiterate in this Claim Two. Wherefore, I begin here by referencing that which I've stated in Claim One as if fully incorporated within this Claim Two, particularly that pertaining to the liberty interest issue.

[18]    I am claiming that my termination from the mandated SOTMP effectuates a "significant and atypical hardship" for which the Defendants cannot justify by application of the *Reasonable Relationship Standard* or valid penological objective. I have asserted, and maintain, that the <u>rule</u> or "technical" violation involved in this case has absolutely no bearing upon my "risk to sexually reoffend" or "rehabilitative need(s)." In fact, I have repeatedly raised this issue with the Defendants by requesting clarification of any correlation of my offense/rule violation to any rehabilitative goals, as well as help with addressing any oversight or misunderstanding on my

part. As I've previously stated, aside from a brief, unrelated memo from Defendant FOLZ, I have received <u>no</u> replies from any of the Defendants – *all* of which whom I've written multiple letters to. (See Claim One, sect. **b.),** Copies of these letters, etc., will be provided in Discovery. Such neglect raises questions of professional ethic. What kind of therapist - regardless of field of expertise, would ignore a client's open plea for help for understanding and self-improvement? Such repeated neglect, along with events involved in this Complaint, have seriously negatively impacted the faith and trust needed for *any* meaningful client-therapist relationship. I now find myself to be somewhat fearful of reentering into this mandated treatment program due to both present and past experience within the SOTMP. Such trepidation is certainly not conducive to establishing a good therapeutic alliance. Added to the Defendants' choice to ignore all written communication with me, I have been transferred to a "non-treatment" facility(s) where I am unable to obtain knowledgeable, meaningful information pertaining to specific SOTMP issues. And my formal requests (i.e., grievances) to transfer back to a facility that does provide this requisite treatment have been denied. This issue now raises my argument supported in the case of

*Ramos v. Lamm*, 639 F.2d 559, (in pertinent part):

> [HN8] "U.S. Const. Amend. VIII is, inter alia, intended to protect and safeguard a prison inmate from an environment where degeneration is probable and self-improvement are unlikely because of conditions existing which inflict needless suffering, *whether physical **or mental.** ...*[H]e is entitled to be confined in an environment which does not result in degeneration or which threatens physical **and mental** well-being." (Emphasis added.)

[19] When this case enters the discovery phase, the records will more than sufficiently show the duration and degree to which this matter has affected me – as well as the Defendants' lack of professionalism and their apparent deliberate indifference towards my pleas for help in under-standing and correcting these matters. As such, this has created a great sense of despair and hopelessness, wondering if I am simply missing something or if I may be more messed up and truly in need help than either I, or the Defendant therapists, have discovered or identified. What I *do* know for sure is that ALL of these issues stated in this Complaint equates to punishment that proportionately, or otherwise, does not fit either the offense for my termination from the SOTMP or that of my criminal conviction and sentence. (See FN1, pg. 8)

[20] This claim easily ties into the 8th Amend. Cruel & Unusual Punishment claim and therefore doubles-down on the need for the Defendants to properly and adequately provide a valid *rational relationship* to my continued punishment – of infinite duration – and a *legitimate* penological or governmental/judicial objective. Without valid justification for this excessively punitive punish-ment for the offenses involved here are, I assert, both an arbitrary action and disproportionate, or inequitable, to what my similarly-situated counterparts (those on parole) are subject to. Even if the court decides that these are two separate classes of people and not "similarly situated," and are therefore exempt from my equal protection claim, I then stand on my claim that the arbitrary sanctions, for a <u>now-expunged</u> offense and for which I continue to suffer - and <u>for an indefinite duration</u>, are indeed excessive and unwarranted and have in fact invoked a valid state-created liberty interest. Perhaps my equal protection claim should be amended to fit the "class of one" theory and, if so, the Court will allow for such amendment in this issue?

[21]  The purpose of Colorado's Sex Offender Lifetime Supervision Act (SOLSA) of 1998[6] is: "[T]o provide treatment and *supervision*, rather than punish sex offenders with terms of incarceration longer than those of other felons in the same class" and "… so that sex offenders may receive treatment and *supervision* [not incarceration] for the rest of their lives, **if** necessary." (Emphasis added.) (Citing *Vensor v. People,* 151 P.3d 1274, 1278 (Colo. 2007). (Also cited in *Tillery v. Raemisch*, 16-cv-0282-WJM-STV, 2017 U.S. Dist.). I could get into a lengthy recitation of argument and case law regarding this particular issue at this time in order to support my challenge of my continued incarceration but I will reserve this for my opening brief, trusting that the Court is already aware of such anticipated argument. I merely mention this initial statement as I now address the "shocks the conscience" factor of substantive due process.

To reiterate I remind the Court that I am currently at the end of my 24th year of my 12 year – indeterminate sentence for a class 3 felony. I maintain that even the 12 year *given* term is excessive and grossly disproportionate when one reviews the specifics of my offense, and when one compares this sentence to other similar offenses and sentences here in Colorado as well as other states. This particular issue alone merits due attention and shall stand as a focal point in this case and, again, calling for the need of the Defendants to demonstrate how they justify withholding mandated sex offender treatment – effectuating my continued incarceration – all as a result of a (now-expunged) COPD infraction, or "technical" violation. [See *United States v. Sims*, 2024, U.S. App. LEXIS 11314 (9th Cir. 2024). This issue will again be presented in the following *procedural* due process subsection of this Claim Two.

[22]  CDOC's AR 700-19, Sex Offender Treatment & Monitoring Program, states in pertinent part that "It is the policy of [CDOC] to provide *specialized sex **offense-specific** treatment* to identified offenders…"(emphasis added). I maintain that my now-expunged COPD conviction (for striking another inmate in self-defense) has nothing to do with any potential to "*sexually reoffend*": the SOTMP's stated objective of providing treatment to correct or reduce a sex offender's risk to sexually reoffend. Besides, the DOC already implements *their* Code of Penal Discipline which they feel sufficiently "corrects" such behavior and for which I have already satisfied. Why, then, must I be subjected to **years** of added, unnecessary incarceration based solely upon this now-expunged rule violation? It is as if I've been convicted of another felony while incarcerated and sentenced by some behavioral health therapist(s)!! Wherefore, this added sanction of termination from the SOTMP, for years, is not only grossly disproportionate for the initial offense but could reasonably be classified as a case of double-jeopardy and yet another constitutional rights violation. As such, I ask the Court to now take judicial notice of this specific issue as I believe it merits further attention. Does not such arbitrary, unwarranted terms of incarceration meet the "shocks the conscience" element of this substantive due process claim.

Substantial due process requires a showing of a degree of outrageousness and a magnitude of actual *or potential* harm that is truly conscience shocking (citing *Tonkovich v.*

---

[6] §18-1.3-1001 C.R.S (in pertinent part):"The General Assembly also finds that keeping all sex offenders in lifetime incarceration imposes an **unacceptably** high cost in *both* state dollars and **loss of human potential**." (Emphasis added.)

*Kansas Bd. Of Regents,* 159 F.3d 504 (10th Cir. 1998)). I also cite the case of *Romano v. Black,* 735 F.3d 319 (8th Cir. CoA 1984) which in [HN4] states:

> "Once an individual has been given the opportunity to prove himself through probation or parole, due process protects the liberty interest inherent in the opportunity to the extent that it may not be ended *without careful consideration of options other than active prison time."*

Although this speaks of probationers and/or parolees, this language speaks of my challenges, in this Complaint, of apparent discrepancies and disparities between "us" (same-classed, "similarly-situated" convicted felony sex offenders) albeit those who are incarcerated, particularly when being held accountable for non-criminal rule or technical violations, such as in this case.

Certainly the facts stated above, combined with all the facts of this Complaint, amount to "atypical and significant hardship" and should satisfy the requisite "shocks the conscience" element of substantial due process for which I am entitled to relief.

### b. Cruel & Unusual Punishment

I begin here by confessing some confusion in the application of this claim to either the 8th Amendment and/or the 14th (here). Therefore I request the incorporation of the language stated in subsection (c) of Claim One as if fully set forth herein. I also incorporate the facts I've presented in the additional subsections of both claims One and Two of this Complaint as they tend to lend themselves to the "totality of conditions" presented in support of this claim.

### c. Procedural Due Process

[23]  As stated in paragraph [5], none of the requested witnesses were made available to me at the 7/29/23 SOTMP termination hearing and no substantial reason for their absence was given. My verbal *and written* request(s) for these witnesses was provided ten days prior to the hearing and will be supported by Discovery documents and audio recordings.  As such this is itself a violation of due process for which I am entitled to relief.

[24]  At the 7/29/23 virtual termination hearing I attempted to question Defendant HARTLEY about her false and/or exaggerated accusations she used in generating the document that brought formal charges against me. As I also stated in paragraph [5], hearing chairman Justin Ensinger abruptly stopped my questioning and would not let me proceed to question my accuser, another due process violation and one that will be supported through Discovery. I maintain that the combination of these two issues are sufficient to warrant a dismissal of this quasi-judicial termi-nation from treatment hearing.

[25]  I also enter a procedural due process challenge in regards to the actual termination from the SOTMP. I am asserting that such indefinite periods of intentional withholding of this statutorily mandated sex offense-*specific* treatment – equating to *added*, unwarranted years of incarceration – is of such magnitude as to necessitate a formal judicial adjudication or imposition, NOT some

contract therapist's subjective and arbitrary decision[7]. Hence this "state-created liberty interest" claim. Legal incarceration can only come by court order and through proper due process – both of which can be legally challenged. Conversely, CDOC/SOTMP's AR700-32, the governing regulation in this matter, specifically <u>proscribes</u> any form of appeal to a Hearings Panel decision, thereby allowing any/all impropriety(s) to occur without fear or impunity. Wherefore, my only recourse for relief in my 7/19/23 termination - and the excessive sanctions for which I continue to suffer, is through litigation, such as the instant case. I assert that AR700-32's proscription of appeal(s) in such quasi-judicial hearings (such as in this matter) is a violation of due process and/or equal protection, etc. I (and others) am entitled to relief from such constitutional violations, especially ones that entail such serious consequences such as those involved in this case.

## Conclusion

Although the majority of the text throughout this Complaint addresses specific events pertaining only myself and call for their own adjudication, they also represent nearly-exact scenarios involving many other incarcerated sex offenders (many of whom I can name) as well as the issues or challenges that I have presented for inclusive adjudication, namely the discrepancy and disparity, or *inequality*, issue(s). When (if) this case proceeds to the discovery phase, I intend to demonstrate just how disproportionate my punishment(s) have been in relationship to my offense(s), especially when compared to that of other identical offenses and offenders who are or have been released on supervised parole and have committed comparable, non-criminal "technical" violations and whose parole authorities, i.e. Community Supervision Team (CST), are in fact *directed* to first seek less-severe alternative means for addressing such violations - sometimes *repeatedly*, <u>before</u> seeking the most severe sanction: parole revocation and the return to prison, which, I assert, is the equivalent to the termination from the DOC's SOTMP as both amount to extended terms of incarceration.

I maintain that my issues and challenges are of constitutional proportion and merit due process for proper adjudication (as outlined in sect. G. Request for Relief).

**E.     PREVIOUS LAWSUITS**

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated?   _X_ Yes    ___ No (check one).

---

[7] According to Colorado's Board of Parole, they *cannot* (and will not) release a convicted sex offender without the SOTMP's (i.e., an SO's *therapist's*) favorable "recommendation." Although one (an SO) may be technically eligible for parole, this is simply not the case absent the SOTMP/therapist's "recommendation."

If your answer is "Yes," complete this section of the form.  If you have filed more than one previous lawsuit, use additional paper to provide the requested information for each previous lawsuit.  Please indicate that additional paper is attached and label the additional pages regarding previous lawsuits as "E. PREVIOUS LAWSUITS."

[1] **Name(s) of defendant(s)**: MOSES 'ANDRE' STANCIL, Exec. Dir. CDOC, et al.

**Docket number and court**: No. 1:23-cv-03432-LTB-SBP, U.S. Dist. Ct. for Colorado

**Claims raised**: 8th Amend. – Equal Protection, Liberty Interest; Abuse of Discretion; Deliberate Indifference; 14th Amend. - Substantive due process

**Disposition**: (is the case still pending?)  No

**Reasons for dismissal, if dismissed**: FRCP Rule 8 (pleadings not well pled) Dismissed *without prejudice*.

**Result on appeal, if appealed**:  Appeal preemptively denied (deemed as being futile).

[2] **Name of Defendant(s)**: DEAN WILLIAMS, Exec. Dir. CDOC; et al.

**Docket no. and court**: 1:20-cv-01579-PAB-STV

**Claims raised**: 8th Amend. – Liberty interest; 14th Amend.--Procedural due process; Deliberate indifference

**Disposition:** Dismissed, with prejudice, per FRCP Rule 12(b)(6), "failure to state a claim upon which relief can be granted"

**Result of appeal:** Pending. ( *Stetzel v. Williams*, No. 22-1140, U.S. Court of Appeals for the 10th Cir.)

[3] **Name of defendant(s):** TIFFANY  HOLUBEK

**Docket number and court:** 14-cv-01875-MEH, U.S. Dist. Ct.- Colo.

**Claims raised:** Retaliation; Abuse of discretion; Deliberate indifference; 14th Amend.

**Disposition:** Judgment for defendant (trial)

**Result of appeal:** N/A

**F.      ADMINISTRATIVE REMEDIES**

WARNING: Prisoners must exhaust administrative remedies before filing an action in federal court regarding prison conditions.  See 42 U.S.C. § 1997 e (a).  Your case may be dismissed or judgment entered against you if you have not exhausted administrative remedies.

Is there a formal grievance procedure at the institution in which you are confined?

        X   Yes        No (check one)

Did you exhaust administrative remedies?

<u>X</u>  Yes*      No (check one)

**\*PLAINTIFF'S NOTES:** CDOC/SOTMP's AR 700-32, Right to Termination Review Hearing, **proscribes** *any* form of appeal [except through litigation] and "hearing Panel's decision is final" and cannot be grieved. This proscription is addressed in Claim Two as well as in Request For Relief. And CDOC's AR 150-01, Code of Penal Discipline, appeals are too narrowly tailored and restricted for adequate use in my case. Yet I did nevertheless challenge certain events involved in this case through CDOC's Grievance Process, but to no avail. ( COPD case #230707; Grievance nos. C-BV23/24-00238069, R-BV23/24-00236308, R-BV23/24-00236580, C-BV23/24-00242947, C-BV23/24-00253219, et al.) Copies will be provided in Discovery.

## G.      REQUEST FOR RELIEF

State the relief you are requesting or what you want the court to do.  If additional space is needed to identify the relief you are requesting, use extra paper to request relief.  Please indicate that additional paper is attached and label the additional pages regarding relief as "G. REQUEST FOR RELIEF."

I seek declaratory, injunctive and compensatory relief.

**Declaratory**: the Court's declaration that:

(a). A state-created liberty interest has in fact been effectuated through the Plaintiff's termination from CDOC's SOTMP, and by the continued withholding of this *legislatively mandated sex offense-specific treatment*;

(b). That procedural due process was violated in the SOTMP termination hearing(s) by denying him the right to present requested witnesses and by not allowing him to contest my accuser's (Defendant HARTLEY) written allegations. [Verification to be provided in Discovery's audio recordings(s) of the Review of Termination from Treatment hearing(s)];

(c). That the still-continuing sanctions imposed by the Defendants – both directly and indirectly and for indefinite duration – are grossly disproportionate to the severity of the offense(s) involved in this case and are without rational relationship to the furtherance of either penologic or *sex offense-specific treatment*/ objectives (especially now since the underlying offense has since been expunged);

(d). That for the intended purpose of this Complaint (and others), both incarcerated and non-incarcerated (i.e., paroled) convicted felony sex offenders ARE considered to be of a "same class" and/or a "similarly-situated" class of people; and

(e). That apparent inequalities do exist between the way that these indistinct groups of people are treated for similar non-criminal "technical" or rule violations, such as in the instant case, and that redress is merited to address the alleged discrepancies and disparities in this matter.

**Injunctive**. 1. That the Defendants shall:

Case No. 1:24-cv-03404-RTG    Document 1    filed 12/09/24    USDC Colorado    pg 20
of 21

(a). Provide a dispositive rational relationship to the furtherance of legitimate penologic purpose and/or a rational *sex offense-specific* treatment objective for the Plaintiff's termination from the SOTMP as well as justification for withholding this legislatively mandated sex offense-specific treatment from him; or in the absence of such justification:

(b). The Defendants will abrogate the Plaintiff's termination and <u>immediately</u> restore him to his former position within the SOTMP.

2. That the Defendants shall conduct a timely review of all applicable state statutes, administrative regulations, policies and procedures governing the termination from the SOTMP , as well as the related consequences, and make the necessary changes so as to create harmonization between the way that non-criminal rule, or "technical" violations are treated between incarcerated sex offenders and their paroled counterparts.

**Compensatory.** The Defendants shall reimburse the Plaintiff for all expenses incurred as a result of the unnecessary and excessive consequences involved with his termination from the SOTMP and the ensuing litigation. Reimbursement will include the costs of, or replacement of, personal property lost due to his unnecessary transfers (and related issues) also a result of the termination from the SOTMP. [Documented itemized proof in this matter will be provided.]


H.    PLAINTIFF'S SIGNATURE


I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct.  See 28 U.S.C. § 1746; 18 U.S.C. § 1621.


Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

*Philip E. Stefl*    12/3/24

(Plaintiff's signature)         (Date)

FOREVER USA
PURPLE HEART

FOREVER USA
PURPLE HEART

FOREVER USA
PURPLE HEART

FOREVER USA
PURPLE HEART

Philip Stetzel - 92684
S.C.F.
COLORADO DEPARTMENT OF CORRECTIONS
NAME:
Register Number:
UNIT:
PO BOX: 6000
City, State Zip:
Sterling, CO 80751

U.S. District Court
Alfred A. Arraj Courthouse
901 19th St. Rm A105
Denver, CO 80294-3589