IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-03404-RTG

PHILLIP E. STETZEL,

    Plaintiff,

v.

MOSES ANDRE STANCIL,
SIOBHAN BURTLOW,
JORDAN HARTLEY,
AMANDA RETTING,
JAMES BAILEY, and
SHANNON FOLZ,

    Defendants.

---

## ORDER TO FILE AMENDED PRISONER COMPLAINT

---

Plaintiff Phillip E. Stetzel is a convicted and sentenced state prisoner at the Sterling Correctional Facility in Sterling, Colorado. On December 9, 2024, Plaintiff filed *pro se* a Prisoner Complaint (ECF No. 1) and Prisoner's Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C. § 1915 (ECF No. 3). Plaintiff has been granted leave to proceed in this action under § 1915. (ECF No. 4). The complaint is accordingly screened under 28 U.S.C. § 1915, 28 U.S.C. § 1915A, and 42 U.S.C. § 1997e(c) because Plaintiff is a prisoner who seeks redress from officers or employees of a governmental entity.

The Court must construe Plaintiff's pleadings liberally because he is not

1

represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be a *pro se* litigant's advocate. *Hall*, 935 F.2d at 1110. For the reasons below, Plaintiff must file an amended Prisoner Complaint.

I.     **PRISONER COMPLAINT**

Plaintiff brings this action under 42 U.S.C. § 1983 against six employees of the Colorado Department of Corrections (CDOC). (ECF No. 1 at 1-4). Moses Andre Stancil and Siobhan Burtlow are sued solely in their official capacities; Jordan Hartley and Amanda Retting are sued in both their individual and official capacities; Plaintiff does not indicate the capacities in which James Bailey and Shannon Folz are sued. (*Id.*). Plaintiff asserts two claims, each with multiple subparts.

Plaintiff's first claim is comprised of multiple subparts and asserted against all named defendants. It is titled as follows: "8th Amendment, U.S. Constitution: a) Liberty Interest; b) Equal Protection; c) Cruel and Unusual Punishment." (*Id.* at 5). Plaintiff explains that he is serving a sentence of 12 years to life under Colorado's Sex Offender Lifetime Supervision Act (SOLSA). Though the supporting allegations span several pages, the essence of Claim 1(a) is that Plaintiff must participate in a Sex Offender Treatment and Monitoring Program (SOTMP) to be eligible for parole. But after he freely confessed to hitting his cellmate once (after the cellmate threatened him), Plaintiff was convicted of a disciplinary violation and subsequently terminated from the SOTMP. (*Id.* at 5-7). Plaintiff maintains that the exaggerated response violates his right to due

2

process.

Claim 1(b) posits an equal protection violation, asserting a disparity between the way incarcerated felony sex offenders and paroled felony sex offenders are treated. According to Plaintiff, non-criminal rule violations committed by paroled sex offenders are treated less harshly than violations committed by incarcerated sex offenders. (*Id.* at 7-10).

Claim 1(c) asserts that the termination from the SOTMP amounts to cruel and unusual punishment that has "caused [Plaintiff] extensive psychological injury which has caused [him] to question [his] sanity." (*Id.* at 10-12).

Plaintiff's second claim is captioned "14th Amendment, U.S. Constitution: a) Substantive Due Process, b) Cruel & Unusual Punishment, c) Procedural Due Process." (*Id.* at 12). The second claim is asserted against defendants Stancil, Retting, and Hartley. (*Id.*). Like the first claim, Claim 2(a) is based on Plaintiff's termination from the SOTMP. He alleges the following: "I am claiming that my termination from the mandated SOTMP effectuates a 'significant and atypical hardship' for which the Defendants cannot justify by application of the Reasonable Relationship Standard or valid penological objective. I have asserted, and maintain, that the rule or 'technical' violation involved in this case has absolutely no bearing upon my 'risk to sexually reoffend' or 'rehabilitative need(s).'" (*Id.* at 12). Although the Court understands the general nature of the claim, the allegations are asserted collectively against defendants Stancil, Retting, and Hartley—Plaintiff does not explain how each defendant is personally

responsible for a substantive due process violation. (*Id.* at 12-15).

Claim 2(b) contends that the "totality of conditions" violates the Eighth Amendment's proscription against cruel and unusual punishments.[1] (*Id.* at 15).

Claim 2(c) asserts that the hearing to determine whether Plaintiff should be terminated from the SOTMP itself violated procedural due process: none of the requested witnesses were made available; Plaintiff was not allowed to question his accuser; and the therapists' recommendation to terminate Plaintiff were subjective and arbitrary. (*Id.* at 15-16).

As relief, Plaintiff seeks various forms of declaratory relief, injunctive relief, and damages. (*Id.* at 19-20). The Court will now discuss the issues presented in the pleading.

---

1 Some of Plaintiff's allegations imply that his underlying conviction and sentence are unconstitutional. (*See, e.g.*, ECF No. 1 at 14 ("I maintain that even the 12 year *given* term is excessive and grossly disproportionate when one reviews the specifics of my offense, and when one compares this sentence to other similar offenses and sentences here in Colorado as well as other states.")). Such challenges to the underlying criminal judgment and sentence may not be raised in this civil rights action. Pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), if a civil judgment necessarily implies the invalidity of a criminal conviction or sentence, the action does not arise until the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by an authorized state tribunal, or called into question by the issuance of a federal habeas writ. *See Heck*, 512 U.S. at 486-87. A civil rights action filed by a state prisoner "is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). Such a challenge must be brought in a habeas corpus action under 28 U.S.C. § 2254 after exhaustion of available state court remedies. *See e.g.*, *Wilson v. Jones*, 430 F.3d 1113, 1120-21, 1123 (10th Cir. 2005); *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996).

## II.     PLEADING ISSUES

### A.     Rule 8

The Prisoner Complaint is verbose and includes discussions of various legal theories and caselaw. A complaint, however, should only present the *alleged facts* in support of Plaintiff's claims form relief and *need not cite specific legal cases*. (*See* instructions included in Section D of the Prisoner Complaint). To analyze the sufficiency of Plaintiff's complaint, the Court accepts as true all well-pleaded factual allegations. *Hall*, 935 F.2d at 1110. Each defendant and the Court should be able to understand Plaintiff's claims for relief and the facts supporting those claims from reading a short and plain statement of facts contained in the complaint.

Rule 8 requires Plaintiff's complaint to contain a short and plain statement of the *facts* explaining why his claim succeeds. Fed. R. Civ. P. 8(a)(2). A complaint "must contain (1) a short and plain statement of the grounds for the court's jurisdiction, . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." *Id.* The philosophy of Rule 8(a) is reinforced by Rule 8(d)(1), which provides that "[e]ach allegation must be simple, concise, and direct." Taken together, Rules 8(a) and (d)(1) underscore the emphasis placed on clarity and brevity by the federal pleading rules. Vague or unintelligible pleadings violate Rule 8.

The twin purposes of a complaint are to give the opposing parties fair notice of the basis for the claims against them so that they may respond and to allow the court to establish whether the allegations, if proven, show that the plaintiff is entitled to relief.

*See Monument Builders of Greater Kansas City, Inc. v. American Cemetery Ass'n of Kansas*, 891 F.2d 1473, 1480 (10th Cir. 1989). The requirements of Fed. R. Civ. P. 8 are designed to meet these purposes. *See TV Communications Network, Inc. v. ESPN, Inc.*, 767 F. Supp. 1062, 1069 (D. Colo. 1991), *aff'd*, 964 F.2d 1022 (10th Cir. 1992).

In any amended pleading, Plaintiff must allege in a clear, concise, and organized manner what each defendant did to Plaintiff, when the defendant did it, how the defendant's action harmed him, what specific legal right he believes the defendant violated, and what specific relief he requests as to each defendant and claim. *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) (citations omitted). Put differently, less is often more when pleading a claim that complies with Rule 8. Plaintiff should omit extraneous, repetitive factual allegations that unnecessarily complicate his claims and make them difficult to follow. *See Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007) (holding that a plaintiff makes a complaint unintelligible "by scattering and concealing in a morass of irrelevancies the few allegations that matter"). Plaintiff is not required to prove his case at the pleadings stage. *See Glover v. Mabrey*, 384 F. App'x 763, 772 (10th Cir. 2010) (unpublished). Plaintiff must only set forth (separately) each of his claims for relief, identify the defendant(s) each claim is brought against, and provide a short and plain statement of the facts supporting the claim. To be sure, a pleading may not comply with Rule 8 by offering discussions of caselaw supported by a long factual narrative that discusses multiple events and does not differentiate between what each defendant is alleged to have done.

## B. Personal Participation

An issue closely related to Rule 8 is personal participation. Allegations of "personal participation in the specific constitutional violation complained of [are] essential." *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011); *see also Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (explaining that individual liability must be based on personal involvement in the alleged constitutional violation). There is no vicarious liability under § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (recognizing that "vicarious liability is inapplicable to *Bivens* and § 1983 suits"). Thus, Plaintiff must allege specific facts that make clear who did what to whom. *See Pahls v. Thomas*, 718 F.3d 1210, 1225-26 (10th Cir. 2013).

Furthermore, although a defendant can be liable based on his or her supervisory responsibilities, a claim of supervisory liability must be supported by allegations that demonstrate personal involvement, a causal connection to the constitutional violation, and a culpable state of mind. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767-69 (10th Cir. 2013) (discussing standards for supervisory liability). In the amended Prisoner Complaint, Plaintiff must allege personal participation by each named defendant.

## C. Individual Versus Official Capacity

"Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." *Brown v. Montoya*, 662 F.3d 1152, 1161, n. 5 (10th Cir. 2011) (citing *Hafer v. Melo*, 502 U.S. 21, 30, 27

(1991)).

### D. Official Capacity Claims and Eleventh Amendment Immunity

Plaintiff is advised that official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). To the extent Plaintiff asserts claims against employees or agents of the State of Colorado in their official capacities— such as employees of the CDOC—he has not named an entity separate from the State of Colorado. *See Stump v. Gates*, 777 F. Supp. 808, 814-16 (D. Colo. 1991), *aff'd*, 986 F.2d 1429 (10th Cir. 1993). However, the State of Colorado and its entities are immune from liability under § 1983 pursuant to the Eleventh Amendment. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *Meade v. Grubbs*, 841 F.2d 1512, 1525-26 (10th Cir. 1988). It is well established that absent an unmistakable waiver by the state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the amendment provides absolute immunity from suit in federal courts for states and their agencies. *Ramirez v. Oklahoma Dept of Mental Health*, 41 F.3d 584, 588 (10th Cir. 1994). The State of Colorado has not waived its Eleventh Amendment immunity, *see Griess v. Colorado*, 841 F.2d 1042, 1044-45 (10th Cir. 1988), and congressional enactment of 42 U.S.C. § 1983 did not abrogate Eleventh Amendment immunity, *see Quern v. Jordan*, 440 U.S. 332, 340-345 (1979).

However, the Eleventh Amendment does not bar a federal court action so long as the plaintiff seeks in substance only prospective relief and not retrospective relief for

8

alleged past violations of federal law. *Verizon Maryland v. Public Service Commission of Maryland*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)); *Hill v. Kemp*, 478 F.3d 1236 (10th Cir. 2007); *see also Ex parte Young*, 209 U.S. 123, 159-60 (1908). Thus, any claim other than one for prospective injunctive relief against the State of Colorado (or one of its employees in an official capacity) is barred.

E. **Legal Standards**

The allegations necessary to establish a § 1983 claim vary with the claim's constitutional underpinning. *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010) ("Our first task in any § 1983 suit alleging a constitutional violation is to isolate the precise constitutional violation with which the defendant is charged.") (cleaned up). It appears that Plaintiff attempts to assert the following claims.

1. *SOTMP claims.*

The Due Process Clause of the Fourteenth Amendment has both a substantive and procedural component. *See Albright v. Oliver*, 510 U.S. 266, 272 (1994). "Procedural due process ensures the state will not deprive a party of [life, liberty, or] property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of [life, liberty, or] property for an arbitrary reason regardless of the procedures used to reach that decision." *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000). "A protected interest in liberty or property may have its source in either federal or state law." *Elliott v.*

9

*Martinez*, 675 F.3d 1241, 1244 (10th Cir. 2012). "[A] state-created interest is not protected by the procedural component of the Due Process Clause unless the interest is an entitlement - that is, unless the asserted right to property or liberty is *mandated* by state law when specified substantive predicates exist." *Id.*

The standard for determining whether there has been a substantive due process violation is "whether the challenged government action shocks the conscience of federal judges." *Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002) (quotations and citations omitted). Negligence is not sufficient to shock the conscience. *Id.* at 1184. In addition, "'a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power.'" *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998) (quoting *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995)). "Even knowingly permitting unreasonable risks to continue does not necessarily rise to the level of conscience shocking." *DeAnzona v. City and County of Denver*, 222 F.3d 1229, 1235 (10th Cir. 2000).

A convicted sex offender in Colorado may have a state-created liberty interest in sex offender treatment if such treatment is required to be eligible for parole. *See Beebe v. Heil*, 333 F.Supp.2d 1011, 1017 (D. Colo. 2004). "However, the right to [sex offender] treatment is not absolute or unconditional." *Allen v. Clements*, 930 F. Supp.2d 1252, 1264 (D. Colo. 2013). Thus, the court in *Beebe v. Stommel*, No. 02-cv-01993-WYD-BNB (D. Colo. Nov. 13, 2006) (ECF No. 163 at 34-35), held it is constitutional to condition receipt of sex offender treatment on an "inmate's willingness and ability to

comply with the rules and regulations governing treatment" and that courts must defer to prison officials "to determine what rules and regulations are necessary to ensure successful treatment that meets institutional concerns." Similarly, in *Doe v. Heil*, 533 F. App'x 831 (10th Cir. 2013) (unpublished), the Tenth Circuit concluded a convicted sex offender in Colorado who refused to comply with the program's prerequisites for admission did not have a liberty interest in being reinstated into the sex offender treatment program. The Tenth Circuit reasoned that

> [i]rrespective of whether a liberty interest would exist under the circumstances of *Beebe*, there is a very material difference between prison administrators terminating an inmate's participation in a sex-offender treatment program and such administrators refusing an inmate's reentry to the program because he refuses to abide by generally applicable requirements for program participation.

*Id.* at 842; *see also Sheratt v. Utah Dep't of Corrections*, 545 F. App'x 744, 748-49 (10th Cir. 2013) (unpublished) (citing *Doe* and concluding that the plaintiff's inability to complete the Utah Department of Corrections SOTP, based on his refusal to admit guilt, which was a requirement for participation in the program, did not implicate the Constitution).

Moreover, the tenets of the SOTMP which require the offender to participate in therapy have been determined to be constitutional and in furtherance of a legitimate penological interest:

> When convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault. States thus have a vital interest in rehabilitating convicted sex offenders. Therapists and correctional officers widely agree that clinical rehabilitative programs can enable sex offenders to manage their

impulses and in this way reduce recidivism. An important component of those rehabilitation programs requires participants to confront their past and accept responsibility for their misconduct.

*McKune v. Lile*, 536 U.S. 24, 33 (2002) (citations omitted) (upholding components of the State of Kansas' clinical rehabilitative program for convicted sex offenders, including a polygraph examination concerning the offender's sexual history); *see also Searcy v. Simmons*, 299 F.3d 1220, 1228 (10th Cir. 2002) ("The state's interest in rehabilitating sex offenders is a valid one, and the requirement for admission of responsibility is considered a legitimate part of the rehabilitative process."); *see also, e.g., People v. Sabell,* 452 P.3d 91, 100 (Colo. App. 2018) ("numerous divisions of this court have considered the constitutionality of SOLSA and have rejected all such challenges") (citing *People v. Collins*, 250 P.3d 668, 679 (Colo. App. 2010); *People v. Firth*, 205 P.3d 445, 452 (Colo. App. 2008); *People v. Lehmkuhl*, 117 P.3d 98, 108 (Colo. App. 2004); *People v. Dash*, 104 P.3d 286, 290 (Colo. App. 2004); *People v. Oglethorpe*, 87 P.3d 129, 133 (Colo. App. 2003); *People v. Strean*, 74 P.3d 387, 393 (Colo. App. 2002)). Disagreement with therapists regarding treatment does not constitute a constitutional violation. *See Firth v. Shoemaker*, 496 F. App'x 778, 791 (10th Cir. 2012) (unpublished) ("the incidents that [plaintiff] relates involve disagreements between him and his therapists regarding characterizations of the facts he reported, rather than defendants forcing him to make false statements of fact in order to progress in treatment").

Plaintiff's amended pleading must allege sufficient facts to state a constitutional violation.

### 2. Equal Protection.

"The equal protection clause provides that '[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws.'" *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 659 (10th Cir. 2006) (quoting U.S. Const. amend. XIV, § 1). It "is essentially a direction that all persons similarly situated should be treated alike[.]" *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an arguable equal protection claim, a plaintiff must first make a "threshold showing" that he or she was treated differently from others with whom the plaintiff was similarly situated. *Brown v. Montoya*, 662 F.3d 1152, 1172-73 (10th Cir. 2011); *see also Matelsky v. Gunn*, 15 F. App'x 686, 689 (10th Cir. 2001) (unpublished) ("In the absence of any specific allegations of differential treatment, the Equal Protection claim is patently inadequate under any of the three equal protection theories—fundamental rights, suspect classification, or 'class of one'—and was properly dismissed as frivolous."); *accord Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (stating that even in a "class of one" equal protection claim, the plaintiff must show that he "has been intentionally treated differently from others similarly situated").

### 3. Eighth Amendment.

To state an arguable Eighth Amendment claim, Plaintiff must allege facts that demonstrate deliberate indifference to a substantial risk of serious harm. *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). Under the Eighth Amendment, "prison officials must ensure that inmates receive

adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quotation omitted). An Eighth Amendment claim must satisfy two requirements. "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, "a prison official must have a 'sufficiently culpable state of mind.'" *Id*. This second requirement is subjective, rather than objective: "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. The Eighth Amendment is not violated unless the conditions deprive a prisoner of the "'minimal civilized measure of life's necessities.'" *Wilson*, 501 U.S. at 298 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Moreover, "[t]he Eighth Amendment 'does not mandate comfortable prisons,' and conditions imposed may be 'restrictive and even harsh.'" *Barney v. Pulsipher*, 143 F.3d 1299, 1311 (10th Cir. 1998) (citation omitted).

Finally, Plaintiff cannot maintain a § 1983 claim against prison officials or administrators on the basis that they denied or ignored his grievances. The denial of a grievance, by itself, without any connection to the violation of constitutional rights, does not establish personal participation under § 1983. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009); *see also Whitington v. Ortiz*, 307 F. App'x 179, 193 (10th Cir.

2009) (unpublished) (finding that the denial of grievances alone is insufficient to establish personal participation in alleged constitutional violations); *Davis v. Ark. Valley Corr. Facility*, 99 F. App'x 838, 843 (10th Cir. 2004) (unpublished) (holding that sending correspondence to a prison warden that outlines "complaints about medical care, without more, does not sufficiently implicate the warden under § 1983").

### 4. Claims of Psychological Harm.

Mental or emotional stress without physical injury is insufficient to state a claim. *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."); *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002) ("As to [plaintiff's] claim for emotional distress, no § 1983 action can be brought unless the plaintiff has suffered physical injury in addition to mental and emotional harms."). Plaintiff must file an amended complaint to adequately demonstrate the violation of a federal right, along with recoverable injury.

### 5. Prison Disciplinary Conviction.

Though not clear, Plaintiff may be attempting to challenge his prison disciplinary conviction. Assuming that Plaintiff can allege facts to show that the prison disciplinary proceeding involved the deprivation of a protected liberty interest, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). If a constitutionally protected liberty or property interest is implicated, due

process is satisfied if the inmate receives advance written notice of the charges, an opportunity to call witnesses and present documentary evidence when consistent with institutional safety and correctional goals, and a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. *See Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563-67). Furthermore, an "impartial decisionmaker is a fundamental requirement of due process that is fully applicable in the prison context." *Gwinn v. Awmiller*, 354 F.3d 1211, 1220 (10th Cir. 2004) (internal quotation marks omitted). However, the decisionmaker is presumed to act with integrity and honesty. *Id.* To overcome the presumption of integrity and honesty, the inmate must point to "some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated." *Id.* (cleaned up).

Plaintiff's amended pleading must allege sufficient facts to meet these standards.

## III. CONCLUSION

Accordingly, it is

ORDERED that Plaintiff file, within thirty (30) days from the date of this order, an amended Prisoner Complaint that complies with all directives contained in this order. To be clear, Plaintiff must submit a single, fully completed Prisoner Complaint on the court-approved form as one document that contains all claims and allegations. Plaintiff is advised that the Court is not required to sort through multiple pleadings to ascertain his claims or compile the required information from multiple documents. It is

FURTHER ORDERED that Plaintiff obtain and utilize the court-approved Prisoner Complaint form (with the assistance of a case manager or the facility's legal assistant), along with the applicable instructions, at www.cod.uscourts.gov. It is

FURTHER ORDERED that, if Plaintiff fails to file an amended Prisoner Complaint that complies with this order within the time allowed, the action may be dismissed without further notice.

DATED December 16, 2024.

BY THE COURT:

*[signature: Richard T. Gurley]*

Richard T. Gurley
United States Magistrate Judge